Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Carolyn Button, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Aaron McRae and Jane Doe McRae, husband and wife; Ross Teeple, in his official capacity as Sheriff of Pinal County; Pinal County, a political subdivision of the State of Arizona; and John and Jane Does 1-10,<br><br>Defendants. | Case No.: ______________<br><br>**PLAINTIFF'S COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff Carolyn Button, through undersigned counsel, alleges as follows for her Complaint against Defendants Aaron McRae and Jane Doe McRae, Ross Teeple in his official capacity as Sheriff of Pinal County, Pinal County, and John and Jane Does 1-10.

**INTRODUCTION**

1. Carolyn Button told a process server to stay off her property. He came through her gate anyway. She stepped to her front door holding her own shotgun, muzzle pointed at the sky, and told him again to leave. Arizona law gave her every right to do that.

2. By the time Pinal County Sheriff's Deputy Aaron McRae pulled up, the process server had already told him by phone that Ms. Button was in her

backyard and no longer had the gun. McRae aimed his department-issued rifle at her anyway. He kept it on her, an unarmed woman standing on her own land, until she was handcuffed and locked in the back of a patrol vehicle.

3. McRae then arrested her for aggravated assault, a dangerous class 3 felony, on the word of the trespasser. Ms. Button spent three nights in jail, posted a $25,000 bond, and spent the next two months and more than $30,000 defending a case the State abandoned on the eve of the hearing at which its only witness would have had to testify.

4. Ms. Button brings this action under 42 U.S.C. § 1983 and Arizona law.

## PARTIES

5. Plaintiff Carolyn Button lives, and at all relevant times lived, in her home in unincorporated Pinal County, Arizona, near Queen Creek. She lives there alone and keeps horses on the property. She is a senior corporate paralegal.

6. Defendant Aaron McRae (Badge No. 2853) was at all relevant times a deputy sheriff employed by the Pinal County Sheriff's Office ("PCSO"). He acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

7. Defendant Jane Doe McRae is the spouse, if any, of Aaron McRae. She is named to bind the marital community. On information and belief, McRae acted on behalf of and for the benefit of his marital community. Plaintiff will amend this Complaint to state her true name once it is known.

8. Defendant Ross Teeple is the elected Sheriff of Pinal County and has held that office since January 2025. As Sheriff, he is the final policymaker for PCSO's law enforcement operations, including the hiring, training, supervision, discipline, and retention of deputies. PCSO is not a jural entity, so the Sheriff in his official capacity is the proper defendant for claims against the office. He is sued in his official capacity.

9. Defendant Pinal County is a political subdivision of the State of Arizona. Pinal County funds PCSO and employs its deputies. Under 42 U.S.C. § 1983, Pinal County is responsible for the policies, customs, and practices of PCSO set by its Sheriff.

10. Defendants John and Jane Does 1-10 are PCSO deputies, sergeants, and supervisors who responded to the scene on October 22, 2025, or who supervised, reviewed, or approved the conduct described below. Their identities are not yet known. They are named in the federal claims only. Plaintiff will seek leave to amend when their identities are learned.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

12. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). Those claims arise from the same events as the federal claims and form part of the same case or controversy.

13. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b)(1) and (2). Every Defendant resides in Arizona, and all of the events giving rise to these claims occurred in Pinal County, Arizona.

**NOTICE OF CLAIM**

14. On April 20, 2026, within 180 days after her state law claims accrued, Ms. Button served a notice of claim under A.R.S. § 12-821.01 on Sheriff Teeple at PCSO headquarters in Florence, Arizona, and on Deputy McRae personally.

15. The notice of claim stated facts sufficient to permit Defendants to understand the basis on which liability is claimed, a specific amount for which the claims could be settled, and the facts supporting that amount.

16. Defendants did not respond. The claim was deemed denied sixty days after it was filed. A.R.S. § 12-821.01(E).

17. This action is brought within one year after Ms. Button's state law claims accrued. A.R.S. § 12-821.

## FACTUAL ALLEGATIONS

### A. Ms. Button's Home and Her Neighbor

18. Ms. Button's home sits on a fenced and gated lot. A fence encloses the yard surrounding her house. Gates open from the yard to the road, including a vehicle gate at the driveway.

19. The enclosed yard around Ms. Button's house is a "fenced residential yard" as Arizona law defines that term. A.R.S. § 13-1501.

20. In April 2025, the Pinal County Superior Court granted Ms. Button an Injunction Against Harassment against her next-door neighbor, Charles Basso. The court affirmed the injunction after a contested hearing, and the Arizona Court of Appeals later affirmed that ruling. The injunction barred Basso from contacting Ms. Button and from going to or near her home. It remained in effect through the events described below.

21. PCSO knew about the injunction. On September 30, 2025, Ms. Button sent PCSO Deputy K. Wagner a copy of the injunction and the minute entry affirming it. On October 7, 2025, Deputy Wagner told her that charges had been filed against Basso for violating it. On October 16, 2025, six days before her arrest, Deputy Wagner confirmed that the charges had been sent to the Pinal County Attorney's Office.

22. On the morning of October 22, 2025, a victim advocate with the Pinal County Attorney's Office left Ms. Button a voicemail about her case against Basso. That evening, PCSO arrested her.

**B. The Process Server**

23. Jason Stoor is a private process server. During the summer and fall of 2025, he made repeated trips to Ms. Button's property trying to serve her with papers in litigation involving her late mother's estate.

24. On information and belief, Stoor's own records show that on one of those trips he "confirmed" Ms. Button's residence by speaking with a neighbor at the home of Charles Basso, the same neighbor the court had enjoined from harassing her.

25. On several of those trips, Stoor let himself through Ms. Button's gates when they were not locked and walked onto her property. On at least one trip he found the gates chained and padlocked.

**C. October 22, 2025**

26. In the early evening of October 22, 2025, Stoor parked on the road outside Ms. Button's vehicle gate.

27. Ms. Button came out of her house and told Stoor to stay off her property. She told him twice.

28. Stoor ignored her. He opened her gate, walked into her fenced residential yard, and headed for her front door. He got within about twenty-five feet of it.

29. Stoor had no license, authorization, or privilege to enter or remain in Ms. Button's fenced residential yard after she told him to stay out. By entering and remaining there, he committed criminal trespass in the first degree. A.R.S. § 13-1504(A)(2).

30. Ms. Button was alone. A man who had been told twice to stay away was walking toward her door. She did not know what he intended, and she understood only that he was somehow connected to the neighbor who had harassed her. She was afraid.

31. She stepped back inside and picked up her lawfully owned .410 shotgun. She returned to her front door holding it in her right hand with the muzzle pointed upward, and she told Stoor again to leave.

32. Ms. Button did not point the shotgun at Stoor. She did not fire it, and she did not threaten to shoot him.

33. Stoor backed away. He did not leave. He stayed on her property and, at 6:17 p.m., called 911.

34. Ms. Button went back inside, set the shotgun down on a table in her front room, and walked out to her backyard to tend to her horses. She did not touch the shotgun again that evening.

### D. McRae Is Told She Is Unarmed and Aims His Rifle at Her Anyway

35. PCSO dispatched McRae to the call. He had completed the police academy in February 2025 and, on October 22, 2025, was still a probationary deputy.

36. While driving to the scene, McRae telephoned Stoor and told him to get in his car and drive away from Ms. Button's home. Stoor did not. He stayed on her property.

37. During that call, Stoor told McRae that he could see Ms. Button in her backyard without the rifle. McRae recorded this fact in his own report.

38. Stoor then told McRae that Ms. Button was walking from her backyard toward him.

39. So before he ever arrived, McRae knew from the 911 caller himself that Ms. Button was unarmed.

40. McRae parked his patrol vehicle in front of Ms. Button's driveway, took out his PCSO-issued rifle, and, as he put it in his report, "presented" the rifle at her.

41. Ms. Button was unarmed. Her hands were empty. She was in her own yard, nowhere near a weapon. She had not threatened McRae or anyone else, and she was not trying to flee. She had seen a sheriff's vehicle arrive and believed the deputy had come to remove the trespasser.

42. McRae ordered her to keep her hands raised and to walk out past her gate. He kept his rifle pointed at her the entire time: from the moment he got out of his vehicle until she was secured in the back of a patrol vehicle.

43. Ms. Button was confused and terrified, and she asked what was going on. McRae's report calls this "combative behavior." It says she tried to argue with him, dropped her hands to her sides, and grabbed at her shirt. None of that made her a threat to anyone. She was an unarmed woman in her own yard trying to understand why a deputy was aiming a rifle at her.

44. As soon as Ms. Button stepped out of her gate, McRae grabbed her, spun her around, and handcuffed her. He cinched the handcuffs so tightly that they cut into her wrists and caused her pain.

45. McRae locked Ms. Button in the back of a patrol vehicle. She sat there, handcuffed in a hot vehicle, for an extended period while deputies talked with Stoor. No one told her what she was accused of.

46. Other PCSO deputies, including some of Defendants Does 1-10, arrived at the scene. None of them intervened.

### E. The Facts McRae Gathered Established Justification. He Arrested Her Anyway.

47. McRae then interviewed Stoor and Ms. Button.

48. Stoor told McRae that he had been trying to serve Ms. Button for two to three months; that he had entered her gated property on earlier occasions when the gates were unlocked; that on October 22 Ms. Button shouted at him to stay off her property; that he walked through her gate anyway and toward her front

door; and that he was about twenty-five feet from the door when she came out with the shotgun.

49. Stoor claimed that Ms. Button pointed the shotgun at him and threatened to shoot him. Ms. Button denied it, and McRae recorded her denial.

50. Stoor also told McRae that, after she lowered the shotgun and went inside, he stayed. By his own account, he was still on her property when McRae arrived.

51. Ms. Button told McRae that she held the shotgun in her right hand with the muzzle pointed upward, that she was afraid for her safety as a woman living alone, and that she wanted the man off her property.

52. On the facts McRae had, Stoor was committing criminal trespass in the first degree, and Ms. Button was the person in lawful possession and control of the premises.

53. Arizona law expressly permits a person in lawful possession or control of premises to threaten deadly physical force "when and to the extent that a reasonable person would believe it immediately necessary to prevent or terminate the commission or attempted commission of a criminal trespass" on the premises. A.R.S. § 13-407(A). Arizona law separately justifies the defensive display of a firearm. A.R.S. § 13-421.

54. In Arizona, justification is not an affirmative defense. Conduct that is justified "does not constitute criminal or wrongful conduct," and once evidence of justification is presented, "the state must prove beyond a reasonable doubt that the defendant did not act with justification." A.R.S. § 13-205(A).

55. Take Stoor's account entirely at face value, and it still describes a homeowner who displayed a firearm to end a trespass after two verbal warnings had failed. Section 13-407(A) permits exactly that. Nothing McRae learned gave him probable cause to believe that Ms. Button had committed aggravated assault, disorderly conduct, or any other crime.

56. McRae did not interview the neighbors Ms. Button identified. He did not seek out neighbors' surveillance video. He collected no evidence that could corroborate or refute Stoor's account.

57. Instead, McRae wrote that he "was able to establish Carolyn knew [Stoor] and presented the firearm based on her own testimony," and arrested her for aggravated assault under A.R.S. § 13-1204(A)(2) and for disorderly conduct. His report never mentions justification.

58. McRae then obtained a telephonic search warrant for Ms. Button's home, went in through the back door, and seized her shotgun and a single shell.

59. Ms. Button asked McRae to have a neighbor feed her horses. Deputies then took her to the Pinal County jail, where she was booked.

**F. The Prosecution and Its Collapse**

60. On October 23, 2025, a judge set a $25,000 secured appearance bond and imposed release conditions that, among other things, barred Ms. Button from possessing firearms and from leaving Arizona without written permission.

61. On October 27, 2025, relying on McRae's report and referral, the Pinal County Attorney's Office filed a Direct Complaint charging Ms. Button with one count of aggravated assault, a class 3 felony, and alleged that the offense was a dangerous felony.

62. Ms. Button remained in jail for three nights before she was released on bond.

63. Ms. Button hired criminal defense counsel. When her lawyer asked for the body camera footage and 911 recordings, the assigned prosecutor declined to produce them and explained that "[i]t is fairly often that we have cases based solely on witness statements with no corroborating evidence."

64. The State offered Ms. Button a plea to a class 6 felony with jail time and three years of probation. She refused it.

65. On December 5, 2025, the court set a witness preliminary hearing for December 16, 2025. At that hearing, the State would have had to put on testimony to support the charge.

66. On December 15, 2025, the day before the hearing, the State moved to dismiss the case. On December 16, 2025, the court dismissed the charge and exonerated Ms. Button's bond. The State has not refiled.

67. The prosecution ended without a conviction, and it ended in Ms. Button's favor. The State abandoned it after she refused to plead guilty and when it would have had to prove the charge with live testimony. The dismissal was not the product of any compromise, plea, or agreement by Ms. Button, or of any misconduct on her part.

**G. PCSO and the Sheriff Look Away**

68. On information and belief, in July 2025, McRae was one of three PCSO personnel who fired their weapons in a deputy-involved shooting in which a woman was killed and a man was wounded. On information and belief, PCSO's critical incident review of that shooting was still open on October 22, 2025, and PCSO kept McRae, a probationary deputy, on patrol answering priority calls involving firearms.

69. On information and belief, in September 2025, before Ms. Button's arrest, a member of the public filed a complaint about McRae's conduct during a traffic stop.

70. On information and belief, McRae's PCSO training file shows little training beyond the academy, and his supervisor recommended that he receive additional training in interviews, interrogation, and report writing.

71. On information and belief, PCSO did not train McRae or its other deputies adequately on when a deputy may point a firearm at a person who is unarmed and poses no immediate threat, or on how Arizona's justification statutes,

including A.R.S. §§ 13-205, 13-407, and 13-421, bear on whether probable cause exists.

72. PCSO opened no investigation, internal or otherwise, into McRae's treatment of Ms. Button, even after it received her notice of claim.

73. On information and belief, in January 2026 McRae tackled and tightly handcuffed a deaf, 79-year-old rideshare driver during a traffic stop, and PCSO did not investigate that incident either.

74. Asked by the press about the complaints against McRae, including Ms. Button's, Sheriff Teeple issued a statement through his public information officer: "I support my deputies. Their job is hard enough without getting investigated for every baseless complaint."

75. With that statement, and by refusing to investigate, Sheriff Teeple, PCSO's final policymaker, knowingly approved McRae's conduct toward Ms. Button and the basis for it.

**H. Ms. Button's Damages**

76. As a direct and proximate result of Defendants' conduct, Ms. Button has suffered and continues to suffer damages, including:

(a) fear and terror at having a rifle aimed at her in her own yard;

(b) physical pain from overtightened handcuffs;

(c) the loss of her liberty, including three nights in jail;

(d) nearly two months under felony charges, a $25,000 bond, and court-imposed release conditions;

(e) more than $30,000 in attorneys' fees and other costs to defend against the criminal charge;

(f) the seizure of her lawfully owned property;

(g) humiliation and injury to her reputation; and

(h) severe emotional distress, anxiety, and loss of sleep, for which she has sought counseling.

## CLAIMS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983: Fourth Amendment, Excessive Force

### (Against Defendants McRae and Does 1-10)

77. Ms. Button incorporates all preceding paragraphs.

78. McRae acted under color of state law.

79. McRae seized Ms. Button and used force against her. He aimed his rifle at her and kept it trained on her until she was in a patrol vehicle, and he handcuffed her so tightly that the cuffs cut into her wrists.

80. That force was objectively unreasonable. McRae knew before he arrived that Ms. Button was unarmed. When he aimed his rifle at her, she was in her own yard, empty-handed, away from any weapon, not fleeing, and not threatening anyone. The only crime anyone had reported was over, and the reporting party had described conduct that Arizona law justifies.

81. On information and belief, Does 1-10 were present, had a realistic opportunity to intervene, and failed to do so.

82. McRae acted with reckless and callous indifference to Ms. Button's federally protected rights.

83. As a direct and proximate result, Ms. Button suffered the damages described above. She is entitled to compensatory damages, punitive damages against McRae, and attorneys' fees and costs under 42 U.S.C. § 1988.

### COUNT II

### 42 U.S.C. § 1983: Fourth Amendment, Unlawful Seizure and False Arrest

### (Against Defendants McRae and Does 1-10)

84. Ms. Button incorporates all preceding paragraphs.

85. McRae seized, detained, and arrested Ms. Button without a warrant.

86. McRae lacked probable cause. The facts known to him, including the facts Stoor himself provided, showed that Stoor was a trespasser in Ms.

Button's fenced residential yard who had refused two requests to leave, and that Ms. Button's display of her shotgun was justified under A.R.S. §§ 13-407(A) and 13-421. No reasonable officer could have believed that probable cause existed to arrest her for aggravated assault or any other offense.

87. On information and belief, Does 1-10 participated in, approved, or failed to intervene in the arrest.

88. McRae acted with reckless and callous indifference to Ms. Button's federally protected rights.

89. As a direct and proximate result, Ms. Button suffered the damages described above. She is entitled to compensatory damages, punitive damages against McRae, and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT III**

**42 U.S.C. § 1983: Fourth Amendment, Malicious Prosecution**

**(Against Defendant McRae)**

90. Ms. Button incorporates all preceding paragraphs.

91. McRae caused criminal proceedings to be instituted against Ms. Button. He arrested her, booked her, wrote the report on which the charge rested, and referred the case to the Pinal County Attorney's Office with a finding of probable cause for felony aggravated assault.

92. The prosecutor charged Ms. Button based on McRae's report and referral. The prosecutor had no corroborating evidence and acknowledged that the case rested on witness statements alone.

93. McRae's report described Ms. Button's fear and confusion as "combative behavior," recast her account of a justified, defensive display of her shotgun as an admission that she had "presented" a firearm, and left out any mention of justification, even though the facts he recorded established it.

94. There was no probable cause for the charge.

95. McRae acted with malice, or at minimum with reckless disregard for Ms. Button's rights, and for a purpose other than bringing an offender to justice.

96. As a result of the legal process McRae set in motion, Ms. Button was seized. She was held in jail, made to post a $25,000 bond, and placed under release conditions that restricted her liberty until the case was dismissed.

97. The prosecution ended without a conviction.

98. McRae acted with reckless and callous indifference to Ms. Button's federally protected rights.

99. As a direct and proximate result, Ms. Button suffered the damages described above, including more than $30,000 in defense costs. She is entitled to compensatory damages, punitive damages against McRae, and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT IV**

**42 U.S.C. § 1983: Municipal Liability**

**(Against Defendants Pinal County and Teeple in His Official Capacity)**

100. Ms. Button incorporates all preceding paragraphs.

101. McRae's conduct violated Ms. Button's rights under the Fourth Amendment, as alleged in Counts I through III.

102. The Sheriff of Pinal County is the final policymaker for Pinal County with respect to PCSO's law enforcement functions, including the use of force, arrests, and the training, supervision, investigation, and discipline of deputies.

103. The constitutional violations Ms. Button suffered were caused by the policies, customs, and practices of Pinal County and PCSO, including:

(a) failing to train deputies on when they may point firearms at people who are unarmed and pose no immediate threat;

(b) failing to train deputies on Arizona's justification statutes and how those statutes bear on probable cause;

(c) placing and keeping a probationary deputy with an open critical incident review, a recent citizen complaint, and documented training needs on patrol answering priority firearm calls without adequate supervision; and

(d) declining to investigate deputies' uses of force and arrests, even after notice of a claim, absent a formal citizen complaint.

104. The need for more or different training and supervision was obvious, and the failure to provide it was so likely to result in violations like those Ms. Button suffered that Pinal County and the Sheriff were deliberately indifferent to the rights of the people PCSO deputies encounter.

105. Separately, Sheriff Teeple, as final policymaker, ratified McRae's conduct. He knew of Ms. Button's claim and its basis, declined to investigate, and publicly dismissed the complaints against McRae as "baseless."

106. These policies, customs, and practices, and the Sheriff's ratification, were the moving force behind the violations of Ms. Button's rights.

107. As a direct and proximate result, Ms. Button suffered the damages described above. She is entitled to compensatory damages and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT V**

**Assault (Arizona Law)**

**(Against Defendants McRae and Teeple in His Official Capacity)**

108. Ms. Button incorporates all preceding paragraphs.

109. McRae intended to cause Ms. Button apprehension of an immediate harmful contact when he aimed his rifle at her, and he caused that apprehension.

110. McRae's conduct was not privileged or justified. Ms. Button was unarmed, posed no threat, and McRae knew she was unarmed before he arrived.

111. McRae acted within the course and scope of his employment with PCSO. The Sheriff, in his official capacity, is vicariously liable for McRae's conduct.

112. As a direct and proximate result, Ms. Button suffered the damages described above.

**COUNT VI**

**False Arrest and False Imprisonment (Arizona Law)**

**(Against Defendants McRae and Teeple in His Official Capacity)**

113. Ms. Button incorporates all preceding paragraphs.

114. McRae intentionally detained, restrained, and arrested Ms. Button without her consent and without lawful authority.

115. McRae lacked probable cause to arrest Ms. Button for any offense, for the reasons alleged above.

116. Ms. Button was aware of her confinement and was harmed by it.

117. McRae acted within the course and scope of his employment with PCSO. The Sheriff, in his official capacity, is vicariously liable for McRae's conduct.

118. As a direct and proximate result, Ms. Button suffered the damages described above.

**COUNT VII**

**Malicious Prosecution (Arizona Law)**

**(Against Defendants McRae and Teeple in His Official Capacity)**

119. Ms. Button incorporates all preceding paragraphs.

120. McRae instituted and caused the continuation of a criminal prosecution against Ms. Button by arresting her and referring the case to the Pinal County Attorney's Office with a report that omitted and mischaracterized material facts.

121. The prosecution terminated in Ms. Button's favor when the State abandoned it and the court dismissed the charge.

122. McRae acted without probable cause.

123. McRae acted with malice. He disregarded facts, known to him, that established Ms. Button's justification, and he pursued a felony charge against a homeowner for defending her property against a trespasser.

124. McRae acted within the course and scope of his employment with PCSO. The Sheriff, in his official capacity, is vicariously liable for McRae's conduct.

125. As a direct and proximate result, Ms. Button suffered the damages described above, including more than $30,000 in defense costs.

**COUNT VIII**

**Intentional Infliction of Emotional Distress (Arizona Law)**

**(Against Defendants McRae and Teeple in His Official Capacity)**

126. Ms. Button incorporates all preceding paragraphs.

127. McRae's conduct was extreme and outrageous. Knowing she was unarmed, he aimed a rifle at a woman standing in her own yard, handcuffed her until it hurt, and then had her jailed and charged with a dangerous felony for lawfully defending her home against a trespasser.

128. McRae intended to cause Ms. Button emotional distress or recklessly disregarded the near certainty that his conduct would cause it.

129. McRae's conduct caused Ms. Button severe emotional distress, for which she has sought counseling.

130. McRae acted within the course and scope of his employment with PCSO. The Sheriff, in his official capacity, is vicariously liable for McRae's conduct.

131. As a direct and proximate result, Ms. Button suffered the damages described above.

## COUNT IX

## Negligent Training, Supervision, and Retention (Arizona Law)

## (Against Defendant Teeple in His Official Capacity)

132. Ms. Button incorporates all preceding paragraphs.

133. The Sheriff owed a duty to members of the public, including Ms. Button, to use reasonable care in training, supervising, and retaining PCSO deputies.

134. The Sheriff knew or should have known that McRae, a probationary deputy with an open critical incident review, a recent citizen complaint, and documented training needs, required additional training and closer supervision before being sent to calls involving firearms.

135. The Sheriff breached that duty by failing to train and supervise McRae adequately, and by retaining him on patrol without adequate supervision.

136. McRae's torts against Ms. Button, alleged above, were a foreseeable result of that breach.

137. As a direct and proximate result, Ms. Button suffered the damages described above.

## PRAYER FOR RELIEF

Plaintiff Carolyn Button asks the Court to enter judgment in her favor and against Defendants as follows:

A. Compensatory damages, general and special, against all Defendants in an amount to be proven at trial;

B. Punitive damages against Defendant McRae on Counts I, II, and III in an amount to be determined by the jury;

C. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law;

D. Pre-judgment and post-judgment interest as allowed by law; and

E. Such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED and FILED this 22nd day of October, 2026.

MILLS + WOODS LAW, PLLC

By *<u>/s/ Sean A. Woods</u>*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Attorneys for Plaintiff